UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| In re Application of<br><br>ALASKA AIRLINES, INC.<br><br>Petitioner, for an Order Pursuant to<br>28 U.S.C. § 1782 to Conduct Discovery for<br>Use in a Foreign Proceeding | No. 1:25-MI-00046-JPB-CMS |

**CONSOLIDATED/JOINT DISCOVERY STATEMENT**

Pursuant to Federal Rule of Civil Procedure 45(d)(3) and Judge Boulee's Standing Order, Petitioner Alaska Airlines, Inc. ("Alaska") and Respondent Delta Air Lines, Inc. ("Delta") submit this Joint Discovery Statement regarding the following issues as identified by Delta: (1) whether the subpoena issued and served on Delta pursuant to this Court's order granting Alaska's *ex parte* application under 28 U.S.C. § 1782 (ECF 11) (the "Subpoena") should be quashed; and (2) whether Delta may file a motion and memorandum of law in support of the same. The parties conferred via video call on December 10, 2025 and did not reach a resolution.

## I. DELTA'S POSITION

Alaska's *ex parte* application under 28 U.S.C. § 1782 seeking discovery from Delta (ECF 1, the "Application") is a strategic fishing expedition seeking sweeping, competitively sensitive documents and testimony from a major competitor before the English High Court ("English Court") even sets discovery boundaries in the underlying litigation. First, *at least* the vast majority of the evidence sought from Delta arguably relevant to Alaska's claims in the underlying litigation is within the power of the English Court to obtain in England. Second, the Application attempts to circumvent discovery parameters to be set by the English Court next year. Third, the Subpoena is unduly burdensome and untailored to Alaska's current claims.

The Application must be viewed against the backdrop of contentious litigation before the English Court. There, Alaska alleges that defendants Virgin Aviation TM Limited and Virgin Enterprises Limited (the "Virgin Defendants") have infringed upon Alaska's exclusive right to use the Virgin marks in connection with airline operations over certain North American routes. Specifically, Alaska alleges that *the*

1

*Virgin Defendants* infringed by *licensing the Virgin brand to related entity Virgin Atlantic* for the purpose of selling tickets via loyalty points *on Virgin Atlantic's website* for North American routes operated by Delta. This alleged infringement is not occurring in Atlanta. *See* Memorandum of Law (ECF 1-1) at 4 (claiming that "the critical evidence at the crux of the [alleged] scheme . . . is right here in Atlanta").

The problems with the Application do not end there. Discovery (in England, "disclosure") in the underlying litigation is not expected to begin for several months because Alaska and the Virgin Defendants are currently re-pleading their claims. Once that process is complete and the relevant issues in the case are defined, the English Court will set a case management conference, at or after which the English Court will issue an order governing the scope of discovery in the action.[1] Nonetheless, rather than waiting on the English Court to set discovery boundaries governed by relevance considerations, Alaska opted to immediately resort to Section 1782 aid to seek sweeping and intrusive discovery from Delta.

Delta seeks to quash the Subpoena on the bases that the first, third, and fourth discretionary factors as enumerated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) are not met here.

With respect to the first discretionary factor—whether "the person from whom discovery is sought is a participant in the foreign proceeding," *Intel*, 542 U.S. at 264—"the availability of evidence [through the foreign proceeding]—not the

---

[1] In support of any motion to quash, Delta will offer evidence to this effect, as Alaska had the opportunity to do upon filing the Application. *See, e.g.*, Decl. of Susana Cao Miranda ISO the Application (ECF 1-3).

2

target's participation *per se*—is the key" to the analysis. *El Poder Del Consumidor v. Coca-Cola Co.*, No. 1:24-CV-03665-TWT-RDC, 2024 WL 5089428, at *4 (N.D. Ga. Oct. 30, 2024), *report and recommendation adopted*, No. 1:24-CV-3665-TWT-RDC, 2025 WL 548273 (N.D. Ga. Feb. 19, 2025). Here, *at least* the vast majority of evidence sought from Delta that is relevant to Alaska's current claims in the underlying litigation may be obtained in England from the Virgin Defendants or Virgin Atlantic (an English entity). *See, e.g.*, Ex. 1 (Subpoena) at 19, 20 (seeking documents concerning marketing and sale of Delta flights *by Virgin entities* and agreements between *Alaska* and *Virgin entities* to which Delta is not a party).

With respect to the third discretionary factor—"whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," *Intel*, 542 U.S. at 265—the Application attempts to circumvent discovery parameters to be set by the English Court next year, *see supra* at 2, by seeking broader discovery from a U.S. non-party in the first instance than the English Court is likely to permit from the Virgin entities in England. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) (considering whether applicant "resort[ed] immediately to § 1782" to avoid unfavorable discovery posture).

With respect to the fourth discretionary factor—whether the request is "unduly intrusive or burdensome," *Intel*, 542 U.S. at 265—the Subpoena is overbroad, unduly burdensome, and seeks to subject a competitor to a fishing expedition for competitively sensitive information. *See, e.g.*, Ex. 1 at 10, 11 (seeking testimony on Delta's "analysis and assessment of the value or positioning of the

3

Virgin brand in the [U.S.] airline industry" and Alaska and Virgin Atlantic's rights under agreements to which Delta is not a party).

Delta respectfully requests that this Court permit briefing on these issues via memorandum of law in support of a motion to quash.

## II.   ALASKA'S POSITION

For more than a decade, Delta has played a unique and central role in the scheme orchestrated by Virgin Group ("Virgin") and its affiliate Virgin Atlantic to simultaneously monetize and infringe trademark rights sold to Alaska. As Virgin collected millions of dollars per year in mandatory royalties from Alaska, Virgin Atlantic, which is 49% owned by and also a joint-venture partner with Delta, used its loyalty program website to surreptitiously sell seats on Delta planes in the domestic United States—the same geography where Alaska's rights to the Virgin marks were supposedly exclusive. Delta is the only player based in the U.S., and as the operator of the breaching flights, possesses a raft of valuable evidence.

Upon consideration of these circumstances and a detailed petition, memorandum of law, and exhibits, Magistrate Judge Salinas granted Alaska's request to serve a subpoena on Delta.[2] ECF 11 ("Order"). Delta identifies no clear error in that Order, and instead makes three arguments in support of its request to brief a motion to quash Alaska's subpoena in its entirety: (1) Delta is not a party in

---

[2] Delta never sought to intervene as Magistrate Judge Salinas considered Alaska's application—instead preferring to make its arguments in the press. *See* Emma Hurt, *Alaska Airlines Subpoenas Delta Over Trademark Dispute*, Atlanta J.-Const. (July 31, 2025) ("This is a long-standing dispute between Alaska and Virgin. We believe any attempt to draw Delta in is meritless.").

4

the U.K. proceeding, (2) that proceeding, filed in 2022, has not advanced very far into discovery, and (3) the subpoena seeks sensitive materials. The first argument actually supports the petition, the second is no bar and in fact permits the parties to take discovery in an orderly way, and the third can easily be solved with a protective order and is precisely why the subpoena is necessary. We address each in turn.

*First*, that Delta is not a party to the U.K. litigation and is beyond the reach of the U.K. court weighs in favor of Alaska's petition. *See In re Clerici*, 481 F.3d 1324, 1334 n.14 (11th Cir. 2007). There is no requirement that Alaska seek discovery from Virgin—or anyone else—before seeking it from Delta. Indeed, any suggestion that § 1782 creates an "exhaustion requirement" is "contrary to law and clearly erroneous." *Rothe v. Aballí*, No. 20-12543, 2021 WL 4429814, at *2 (11th Cir. Sep. 27, 2021); *In re Application of Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016). And Delta, while participating in and profiting from the violation of Alaska's rights, does not get to dictate how Alaska takes discovery. That said—and contrary to Delta's repeated *ipse dixit* assertions—much of the discovery sought likely *is* in Delta's exclusive possession. Delta was the operator of the infringing flights, and therefore holds information about when the infringement began, the extent of it, the financial impact, and how Delta communicated about it. If Delta wants to try to make undue burden arguments based on the mere possibility of duplication, the proper course would be to meet and confer about particular requests.

*Second*, Delta's argument that the subpoena attempts to circumvent or get ahead of U.K. discovery parameters borders on frivolous. *Intel* expressly rejected a "foreign-discoverability" requirement as "senseless." *Intel*, 542 U.S. at 262.

5

Similarly, Delta's claim of prematurity is squarely foreclosed. The Eleventh Circuit routinely authorizes discovery even when a foreign proceeding is only "within reasonable contemplation." *See, e.g.*, *Bracha Found.*, 663 F. App'x at 763-64; *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1265 (11th Cir. 2014). The U.K. litigation, which was filed in 2022 and is well underway, plainly suffices. ECF 1-3 ("Miranda Decl.") at 6. And allowing U.S. discovery to operate at its own pace also makes good sense; it lets the parties proceed in an orderly manner, rather than be subject to inflexible foreign deadlines. Surely if Alaska's subpoena came on the eve of a discovery deadline in the U.K., Delta would be complaining about the rush.

*Third*, Delta's boilerplate objections do nothing to show any real burden, as required under Rule 45. For every single Request and Topic, Delta raises a laundry list of essentially identical, copy-pasted objections. *See* Ex. 1 (Delta's Objections) at 24-60. Delta has made no attempt to further explain its objections, or work with Alaska to try to resolve them. That refusal to "meet . . . somewhere in the middle or to narrow the discovery request" is telling. *Consorcio Ecuatoriano*, 747 F.3d at 1272 (citing *Clerici*, 481 F.3d at 1335). Finally, the fact that Delta broadly asserts its records are commercially sensitive actually concedes that there is relevant and important information in Delta's possession. And the answer to Delta's confidentiality concerns is a protective order, which Alaska has already agreed to draft for discussion, and a meet-and-confer process, not blanket obstructionism.

Alaska respectfully requests that this Court deny Delta's request and order the parties to confer in good faith about the production of documents and a witness.

This eighteenth day of December, 2025.

| | |
|---|---|
| */s/* John C. Quinn | */s/* David L. Balser |
| John C. Quinn | David L. Balser |
| Sean Hecker | Georgia Bar No. 035835 |
| Hecker Fink LLP | **KING & SPALDING LLP** |
| 350 Fifth Avenue, 63rd Floor | 1180 Peachtree Street, N.E. |
| New York, NY 10118 | Suite 1600 |
| jquinn@heckerfink.com | Atlanta, GA 30309 |
| shecker@heckerfink.com | Tel: (404) 572-4600 |
| (212) 763-0883 | Fax: (404) 572-5100 |
| | dbalser@kslaw.com |
| Katherine Epstein | |
| Hecker Fink LLP | *Attorney for Respondent* |
| 1050 K Street NW, Suite 1040 | |
| Washington, DC 20001 | |
| kepstein@heckerfink.com | |
| (212) 742-2661 | |
| | |
| Aaron M. Danzig | |
| Georgia Bar No. 205151 | |
| Arnall Golden Gregory LLP | |
| 171 17th Street NW | |
| Suite 2100 | |
| Atlanta, GA 30363 | |
| aaron.danzig@agg.com | |
| (404) 873-8504 | |
| | |
| *Attorneys for Petitioner* | |

7

## RULE 7.1(D) CERTIFICATION

The undersigned counsel certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).

*/s/ David L. Balser*
David L. Balser
Georgia Bar No. 035835

*Attorney for Respondent*
